**2023-1864, -1940**

United States Court of Appeals
for the Federal Circuit

**SHOCKWAVE MEDICAL, INC.,**
***Appellant,***

**v.**

**CARDIOVASCULAR SYSTEMS, INC.,**
***Cross-Appellant,***

**KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
***Intervenor.***

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2019-00405

**Brief for Intervenor**

FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

PETER J. AYERS
Senior Counsel for Patent Law and Litigation

MAI-TRANG D. DANG
MAUREEN D. QUELER
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

January 23, 2024

*Attorneys for the Director of the United States Patent and Trademark Office*

## REPRESENTATIVE CLAIM ON APPEAL

1. An angioplasty catheter comprising:

an elongated carrier sized to fit within a blood vessel, said carrier having a guide wire lumen extending therethrough;

an angioplasty balloon located near a distal end of the carrier with a distal end of the balloon being sealed to the carrier near the distal end of the carrier and with a proximal end of the balloon defining an annular channel arranged to receive a fluid therein that inflates the balloon; and

an arc generator including a pair of electrodes, said electrodes being positioned within and in non-touching relation to the balloon, said arc generator generating a high voltage pulse sufficient to create a plasma arc between the electrodes resulting in a mechanical shock wave within the balloon that is conducted through the fluid and through the balloon and wherein the balloon is arranged to remain intact during the formation of the shock wave.

Appx200, 6:21-39.

## RELEVANT STATUTORY PROVISION

**35 U.S.C. § 311 - Inter partes review**

(b) Scope.—

A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.

## TABLE OF CONTENTS

I. Statement of the Issues ....................1

II. Statement of the Case ....................2

A. Statutory Background ....................3

B. The ’371 Patent ....................4

C. CSI’s petition relies on AAPA in combination with Levy to establish obviousness. ....................6

D. After issuing its first Final Written Decision, the Board initiated rehearing to reconsider the use of AAPA in view of the Director’s first AAPA Guidance. ....................9

E. The Director issued updated Guidance on AAPA following *Qualcomm I*. ....................10

F. The Board’s Decision on Remand ....................11

III. Summary of the Argument ....................12

IV. Argument ....................15

A. Standard of Review ....................15

B. The Director’s updated AAPA Guidance correctly interprets 35 U.S.C. § 311 with respect to using AAPA in IPR proceedings. ....................15

1. The Director’s reading of § 311 is consistent with the language of the statute. ....................16

2. The Director’s reading of § 311 is consistent with this Court’s precedent. ....................18

3. The Director’s reading of § 311 is consistent with the statute’s legislative history. ....................20

4. Shockwave’s interpretation contradicts the statutory language and the tenets of a proper obviousness analysis. ....................22

a. Shockwave's test based on the mere presence of AAPA in the ground of unpatentability lacks support. ....................22

b. Shockwave's restrictions on the use of AAPA are inconsistent with § 103. ....................23

C. The Board correctly applied the Director's interpretation of § 311 and found CSI's use of AAPA proper. ....................26

V. Conclusion ....................29

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988) ........................................................................25

*In re Fout*,
675 F.2d 297 (C.C.P.A. 1982) ........................................................................25

*Koninklijke Philips N.V. v. Google LLC*,
948 F.3d 1330 (Fed. Cir. 2020) ....................................................................*passim*

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007).....................................................................................17, 24

*Lone Star Silicon Innovations LLC v. Iancu*,
809 F. App'x 773 (Fed. Cir. 2020) ..................................................................4, 17

*Mayo Found. for Med. Educ. & Research v. Iancu*,
938 F.3d 1343 (Fed. Cir. 2019) ........................................................................15

*In re Nomiya*,
509 F.2d 566 (C.C.P.A. 1975) ....................................................................25, 26

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
491 F.3d 1342 (Fed. Cir. 2007) ........................................................................20

*Quad Env'l Techs. Corp. v. Union Sanitary Dist.*,
946 F.2d 870 (Fed. Cir. 1991) ....................................................................20, 21

*Qualcomm Incorporated v. Apple Inc.*,
24 F.4th 1367 (Fed. Cir. 2022) ....................................................................*passim*

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ..............................................................17, 25, 28

*In re Rishoi*,
197 F.2d 342 (C.C.P.A. 1952) ........................................................................25

*Yeda Research v. Mylan Pharms. Inc.*,
906 F.3d 1031 (Fed. Cir. 2018) ....................................................................24, 25

**Statutes**

35 U.S.C. § 103 .......... *passim*

35 U.S.C. § 103(a) .......... 17

35 U.S.C. § 112 .......... 3

35 U.S.C. § 311 .......... *passim*

35 U.S.C. § 311(b) .......... *passim*

**Other Authorities**

H.R. Rep. No. 112-98, pt. 1 (June 1, 2011) .......... 20, 21

H.R. Rep. No. 1307, 96th Cong., 2d Sess. 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460 .......... 20

*Industrial Innovation and Patent and Copyright Law Amendments*: *Hearings on H.R. 6933, et al., Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice, Comm. on the Judiciary*, 96th Congress, 2d Sess. 168-169 (1980) .......... 21

## STATEMENT OF RELATED CASES

The Director is not aware of any related cases in connection with the patent at issue (U.S. Patent No. 8,956,371). Cardiovascular Systems, Inc. ("CSI") identifies two appeals involving the same parties that were before this court in Appeal Nos. 20-2251 and 20-2314. CSI Br. at x. The question of whether the Board correctly found the use of AAPA proper under 35 U.S.C. § 311(b) is directly at issue in *Qualcomm Incorporated v. Apple Inc.*, Appeal No. 23-1208, in which the Director has also intervened. A decision in that appeal is likely to impact the outcome and analysis of the present case.

## I. STATEMENT OF THE ISSUES

In this inter partes review of U.S. Patent No. 8,956,371 ("the '371 patent"), petitioner CSI relied on one or more prior art patents or printed publications in each of its unpatentability grounds. CSI also relied on certain admissions in Shockwave's '371 patent about the state of the prior art at the time Shockwave filed its application: Applicant-Admitted Prior Art ("admissions" or "AAPA"). The Board found the challenged claims unpatentable in light of this combination of printed prior art and AAPA.

By statute, an IPR petitioner may challenge the patentability of an issued patent claim "only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). Shockwave argued to the Board that CSI violated this statute by relying on AAPA in its unpatentability grounds. Shockwave did not dispute that the identified portions of the '371 patent were admissions of what was known in the art at the time of the invention or that those admissions meet the claimed limitations for which they were proffered. Instead, Shockwave argued that AAPA impermissibly formed the "basis" of CSI's unpatentability grounds under § 311(b) because AAPA was cited in combination with one or more prior art publications in each ground of unpatentability. The Board rejected Shockwave's interpretation of § 311(b), relying heavily on guidance issued by the Director following this Court's remand decision in *Qualcomm Incorporated v.*

*Apple Inc.*, 24 F.4th 1367 (Fed. Cir. 2022) (*"Qualcomm I"*). That guidance, consistent with *Qualcomm I*, advises Board panels that AAPA may be used in an obviousness challenge in an IPR, not just for background information, but also to supply a missing claim limitation, provided that the challenge also relies on a prior art patent or printed publication. Appx10740-10744 (citing *Qualcomm I*, 24 F.4th at 1376).

The issue presented in this case is whether the Board correctly determined that CSI's use of AAPA in its IPR petition did not violate the statutory limit in 35 U.S.C. § 311(b).

## II. STATEMENT OF THE CASE

This appeal arises from IPR2019-00405, initiated by CSI, challenging claims 1-17 of Shockwave's '371 patent. Appx2.[1] The Board found that CSI had established that claims 1-4 and 6-17 were unpatentable under 35 U.S.C. § 103 over Levy[2] and other prior-art references in combination with admissions in the '371 patent, but that CSI had not shown claim 5 to be unpatentable. Appx92-96.[3] The Director intervenes in this appeal to defend the Board's finding that the use of AAPA in this proceeding was proper under 35 U.S.C. § 311(b). This same question

[1] Citations to the Joint Appendix are denoted as "Appx___." Citations to Shockwave's Brief are denoted as "Br. at __."
[2] European Patent Application EP 0571306 A1 to Guy Levy (November 24, 1993). Appx1733-1739.
[3] CSI cross-appealed (Case No. 23-1940). ECF Nos. 9-10.

is the sole issue on appeal in *Qualcomm Incorporated v. Apple Inc*., Appeal No. 23-1208, in which the Director has also intervened. A decision in that appeal is likely to impact the outcome and analysis of the present case.

### A. Statutory Background

In an IPR, petitioners "may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under [35 U.S.C.] section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). The Board is therefore precluded from considering the patentability of original claims on grounds under other statutory sections such as 35 U.S.C. § 112, and from using non-printed sources of prior art, such as public use or commercial sales, as a basis for cancelling patent claims. *See Qualcomm I*, 24 F.4th at 1376. Likewise, Section 311 also excludes using AAPA as the basis of an IPR. *Id*. at 1375. AAPA is a description of prior art found in the challenged patent, and while AAPA is prior art, it "is not contained in a document that is a prior art patent or prior art printed publication." *Id.* at 1375 & n.11.

These exclusions aside, AAPA can be used in an IPR proceeding. *Id.* at 1375-76. Section 311 specifically permits a ground of unpatentability based on obviousness under § 103. 35 U.S.C. § 311(b). And the language of Section 103 makes clear that the cornerstone of obviousness is the knowledge possessed by one of ordinary skill in the art. *See* 35 U.S.C. § 103; *see Qualcomm I*, 24 F.4th at 1376

(“the assessment of a claim’s patentability is inextricably tied to a skilled artisan’s knowledge and skill level”); *see also Lone Star Silicon Innovations LLC v. Iancu*, 809 F. App’x 773, 777 (Fed. Cir. 2020) (“the statutory definition of obviousness expressly depends on what would have been known to a person having ordinary skill in the art.”). As this Court has explained, AAPA may therefore be used in an IPR challenge under § 103 as evidence of the skilled artisan’s background knowledge at the time of the invention. *Qualcomm I*, 24 F.4th at 1376.

**B. The ’371 Patent**

The ’371 patent concerns “a treatment system for percutaneous coronary angioplasty or peripheral angioplasty” in which a dilation catheter is used to address a calcified lesion in the wall of an artery and restore normal blood flow to the artery. Appx198, 1:13-18. The specification explains that calcified lesions require high pressure to break the calcified plaque and push it back into the vessel wall. Appx198, 1:18-20. Figure 1 of the ’371 patent, shown below, is “a view of the therapeutic end of a typical prior art over-the-wire angioplasty balloon

FIG. 1
(PRIOR ART)



catheter." Appx190, Fig. 1; Appx199, 3:7-8.

Due to the high pressures required to break the plaque in the blood vessel, the "typical prior art" over-the-wire angioplasty "can contribute to vessel rebound, dissection, thrombus formation, and a high level of restenosis," and high pressures on certain types of lesions lead to "undue stress to the free wall of the vessel," among other problems. Appx198, 1:20-36. To mitigate these injuries to the blood vessel, the '371 patent describes a device that uses a series of mechanical shockwaves, generated through an electrical arc within the balloon, to break up the calcified lesions in the vessel, thereby avoiding excessive pressure on the vessel walls by the balloon itself. Appx198, 1:40-45; Appx199, 4:3-41. Figure 2, shown below, illustrates one embodiment of the invention.

FIG. 2




Appx190, Fig. 2. The specification describes this figure as "a side view of a dilating angioplasty balloon catheter with two electrodes within the balloon

attached to a source of high voltage pulses." Appx199, 3:9-12.

The embodiment shown in Figure 2 is reflected in the claims. Claim 1 is illustrative:

> 1. An angioplasty catheter comprising:
>
> [a] an elongated carrier sized to fit within a blood vessel, said carrier having a guide wire lumen extending therethrough;
>
> [b] an angioplasty balloon located near a distal end of the carrier with a distal end of the balloon being sealed to the carrier near the distal end of the carrier and with a proximal end of the balloon defining an annular channel arranged to receive a fluid therein that inflates the balloon; and
>
> [c] an arc generator including a pair of electrodes,
>
> [d] said electrodes being positioned within and in non-touching relation to the balloon,
>
> [e] said arc generator generating a high voltage pulse sufficient to create a plasma arc between the electrodes resulting in a mechanical shock wave within the balloon that is conducted through the fluid and through the balloon and wherein the balloon is arranged to remain intact during the formation of the shock wave.

Appx200,[4] 6:21-39 (line breaks and letter designations [a]-[e] added).

### C. CSI's petition relies on AAPA in combination with Levy to establish obviousness.

CSI asserted in its petition that the claimed angioplasty balloon catheter was obvious in view of Levy, a prior art European patent application concerning angioplasty catheters, as modified by AAPA, and in combination with additional

[4] The Director's brief uses the Board's added line breaks and letter designations [a]-[e] to the claim for consistency in discussing the claim elements. *See* Appx9-10.

prior art.[5] *See* Appx354-362. In particular, as relevant to the Director's intervention, the petition relied on the combination of Levy and AAPA to teach claim elements [a] and [b]. Appx354-357. CSI stated that "AAPA" "refers to the typical prior art over-the-wire angioplasty balloon catheter described in the '371 patent and as disclosed in Healy and Hayes," two exemplary prior art patents included along with the petition. Appx355. The petition did not identify, however, any specific portions of Healy or Hayes. With respect to the '371 patent, CSI relied on Figure 1 and its depiction of an angioplasty balloon with guide wire, labeled as "PRIOR ART," Appx354 (citing Appx190, Fig. 1), and its corresponding description as a "a view of the therapeutic end of a *typical prior art* over-the-wire angioplasty balloon catheter." Appx354 (emphasis added) (citing Appx199, 3:65-4:2); *see also* Appx345 (citing Appx198, 1:18-36).

For element [a], the elongated carrier sized to fit within a blood vessel having a guide wire lumen extending therethrough, the petition stated that "[t]he '371 patent admits that prior art discloses an angioplasty catheter having an elongated carrier sized to fit within a blood vessel and having a guidewire lumen therethrough." Appx354 (citing Fig. 1 and its corresponding description). The

[5] The Director's brief focuses only on the ground of unpatentability proposed for claim 1, as claim 1 is illustrative of the subject matter of the claims (Appx104; *see also* Br. at 10), and because any holding by this Court regarding whether the use of AAPA was proper in the ground proposed for claim 1 will apply equally to those grounds challenging other claims of the '371 patent (*see* Appx92-95).

petition also stated that such typical over-the-wire angioplasty balloon catheters are the same as disclosed in numerous references, such as Healy and Hayes. Appx355. The petition also added that "Levy discloses an angioplasty catheter that includes an elongated carrier sized to fit within a blood vessel" and guidewire lumen recited in claim element [a]. *Id.* (citing Appx1743, Fig. 1 (catheter 8 with longitudinal bore inserted into blood vessel 2 where plaque deposit 4 has developed with balloon); Appx1735; Appx1642-1643, ¶¶110-112).

As for claim element [b], the petition stated that the AAPA discloses the recited "angioplasty balloon located near a distal end of the carrier with a distal end of the balloon being sealed to the carrier and with a proximal end of the balloon defining an annular channel arranged to receive a fluid therein that inflates the balloon." Appx356 (citing Appx190, Fig. 1; Appx199, 3:65-4:2; Appx1643-1644, ¶113). The petition also stated that "Levy discloses an angioplasty balloon located near a distal end of the carrier and with a proximal end of the balloon defining an annular channel arranged to receive a fluid therein that inflates the balloon." Appx356 (citing Appx1743, Fig. 1; Appx1737-1738; Appx1644, ¶114).

The petition asserted that, given their ubiquity, a person of ordinary skill in the art would have used the "most common and widely used type of angioplasty catheter and balloon design" of the AAPA with Levy's angioplasty balloon with predictable and expected results. Appx357 (citing Appx1644-1645, ¶115).

The Board instituted an IPR on the unpatentability of claim 1 as obvious in view of the combined teachings of Levy, the AAPA, and the additional prior-art references. Appx535-562 at Appx558.

### D. After issuing its first Final Written Decision, the Board initiated rehearing to reconsider the use of AAPA in view of the Director's first AAPA Guidance.

In July 2020, the Board issued a final written decision finding that CSI had established that claim 1 is unpatentable as obvious over the combination of Levy, AAPA, and additional prior art. Appx98-186. In that decision, the Board rejected Shockwave's argument that it could not consider AAPA because AAPA is not a patent or printed publication under § 311(b). Appx132-133. On August 18, 2020, however, the Director issued binding agency guidance on the use of AAPA in IPRs under § 311. Appx10730-10738 (hereinafter "First AAPA Guidance"). The First AAPA Guidance acknowledged that admissions in a challenged patent cannot be the "basis" of an IPR under § 311, but explained that AAPA was still permissible as evidence of the general knowledge of the skilled artisan, including to supply a missing claim limitation or support a motivation to combine. *Id.*; *see Qualcomm I*, 24 F.4th at 1373. Following the First AAPA Guidance, which cited the Board's final written decision in this case as "inconsistent" with § 311(b), the Board *sua sponte* granted rehearing. Appx10731-10732; Appx1080-1081. On rehearing, the Board authorized the parties to submit two rounds of briefing on the issue of "the

effect of the [First] AAPA Guidance in this proceeding and whether the AAPA Guidance is proper under the APA." Appx5; Appx1083-1085.

### E. The Director issued updated Guidance on AAPA following *Qualcomm I*.

While this case was pending on rehearing, this Court issued an opinion in *Qualcomm I*, agreeing with the First AAPA Guidance, and holding that AAPA may not constitute the "basis" of an IPR under § 311 because AAPA is not contained in a prior art patent or printed publication. *Qualcomm I*, 24 F.4th at 1373-75. Thus, an IPR patentability challenge may not rely "solely [on] AAPA without also relying on a prior art patent or printed publication." *Id*. at 1377. Nevertheless, this Court held that AAPA is permissible evidence in an IPR for establishing the skilled artisan's knowledge at the time of the invention, including to supply a missing claim limitation. *Id*. at 1376.

Following the Court's decision in *Qualcomm I*, the Director issued updated binding agency guidance on the treatment of AAPA in IPRs under § 311, which superseded the First AAPA Guidance. Appx10739-10745 (hereinafter "Updated AAPA Guidance"). Consistent with *Qualcomm I*, the Updated AAPA Guidance states that AAPA cannot form the basis of an IPR, but reiterates the importance of evidence of the skilled artisan's knowledge in an obviousness analysis. *Id*. To that end, the Updated AAPA Guidance provides clear guidance to Board panels on the permissible use of AAPA. Specifically, where a petition relies on AAPA in

combination with at least one prior art patent or printed publication, the Updated AAPA Guidance explains that the AAPA does not form the basis of the ground under § 311. Appx10742. The Updated AAPA Guidance acknowledges, consistent with *Qualcomm I*, that admissions may be used, *inter alia*, to supply missing claim limitations. *Id*. The Updated AAPA Guidance also removes the previous guidance's requirement that a prior art patent or printed publication form the "foundation or starting point" of an IPR. *See generally* Appx10739-10745; *cf.* Appx10735 & n.4. It further directs that the analysis does not turn "on the number of claim limitations or claim elements the admission supplies or the order in which the petition presents the obviousness combination." Appx10743.

**F. The Board's Decision on Remand**

The Board issued a final written decision on rehearing applying the Updated AAPA Guidance and *Qualcomm I* to address the question of whether AAPA properly formed the basis of CSI's unpatentability challenge. Appx6; Appx31-32. The Board noted that neither party requested briefing on the effect of *Qualcomm I* or the Updated AAPA Guidance. Appx6; Appx31.

The Board observed that Shockwave did not dispute that elements [a] and [b] were well known in the art and noted that the '371 patent labels an angioplasty balloon catheter with these elements as "PRIOR ART." Appx39. The Board found that pursuant to the updated guidance, the AAPA did not form the basis of the

§ 103 ground because CSI relied on prior art patents and printed publications (e.g., Levy) in combination with the AAPA, with the AAPA "demonstrating the background knowledge possessed by a person of ordinary skill in the art at the time of the invention that angioplasty catheters were conventionally inserted into a patient along a guidewire that passes through a lumen in the catheter." Appx31-32. On rehearing, CSI cited to specific portions of Healy and Hayes to support its position that angioplasty catheters were well known. Appx32. Shockwave responded by arguing that those citations were untimely and should not be considered. *Id.* The Board found that the "well-known configuration of an angioplasty catheter" was "apparent on the face of Healy and Hayes," but that the AAPA was sufficient evidence of the knowledge of an ordinarily skilled artisan even without the support of Healy and Hayes. *Id.* On the obviousness of elements [a] and [b], the Board found that "the ordinarily skilled artisan would have had motive to combine the teachings of Levy with the background knowledge reflected in the AAPA to arrive at the claimed configuration." Appx41.

## III. SUMMARY OF THE ARGUMENT

Shockwave does not dispute that the '371 patent contains admissions regarding the state of the prior art at the time of the invention. Nor does it dispute that those admissions satisfy the corresponding elements of the claims. Such admissions are binding on Shockwave regarding what was known in the art. And

while § 311 limits the basis of an IPR challenge to prior art patents or printed publications, thereby excluding grounds based *solely* on AAPA, this Court has made clear that because evidence of what the skilled artisan knew is inextricably tied to obviousness analysis, AAPA may be used in combination with printed publications to mount an obviousness challenge in an IPR. Consistent with this Court's *Qualcomm I* decision, as accurately reflected in the Director's Updated AAPA Guidance, the Board correctly found CSI's reliance on AAPA in combination with a prior art publication (Levy) permissible.

Shockwave's attempt to avoid the binding nature of its admissions by challenging the USPTO's interpretation of the use of AAPA under § 311 should be rejected. The Director's Updated AAPA Guidance correctly reads § 311 to permit the use of AAPA in an obviousness analysis as long as the challenge also relies on a prior art patent or printed publication. This reading comports with the language of § 311, as interpreted by this Court in *Qualcomm I*, which requires the basis of the unpatentability ground to be a prior art patent or printed publication, but does not otherwise preclude reliance on AAPA. Indeed, the ordinary meaning of "basis" includes being one component of a larger whole, and certainly does not exclude the addition of other evidence. Moreover, § 311's authorization of review for unpatentability under § 103 necessarily contemplates the Board's consideration of evidence, like AAPA, that establishes what was known in the art. The Director's

reading further reflects this Court's related precedent acknowledging and endorsing the use of evidence, like AAPA, to inform the ordinarily skilled artisan's knowledge in IPR proceedings. The Director's interpretation also furthers Congress' goal of streamlining these administrative procedures by excluding non-printed sources of prior art, such as evidence of public use or commercial sales, while potentially narrowing the disputed issues in the process. As this Court already recognized, AAPA does not implicate the type of prior art that Congress intended to avoid.

Shockwave asserts that the word "basis" in § 311 excludes combinations of AAPA and a prior art patent or printed publication. This interpretation lacks support in the statute's language and is inconsistent with a proper obviousness analysis. Shockwave's position also fails to account for this Court's jurisprudence holding that evidence like AAPA may be combined with prior art to supply missing claim limitations. At bottom, the Director's interpretation of § 311, not Shockwaves narrow reading, stays true to the statutory language, to this Court's precedent acknowledging the indispensable role of the skilled artisan's knowledge in an obviousness analysis, and to Congressional intent.

The Board here applied the Updated AAPA Guidance to correctly find CSI's use of AAPA permissible because CSI relied on a prior art printed publication—Levy—in combination with AAPA. Shockwave's arguments to the contrary, like

its statutory interpretation arguments, focus on the role of the AAPA, and particularly on CSI's combination of the prior art with AAPA. It is clear, however, that AAPA may supply a missing claim limitation and that Shockwave has admitted that the elements at issue were known in the art. Shockwave's claims should not escape patentability review simply because they already admitted certain claim elements were within the skilled artisan's knowledge.

## IV. ARGUMENT

### A. Standard of Review

Statutory interpretation is a question of law, reviewed *de novo*. *Mayo Found. for Med. Educ. & Research v. Iancu*, 938 F.3d 1343, 1349 (Fed. Cir. 2019).

### B. The Director's updated AAPA Guidance correctly interprets 35 U.S.C. § 311 with respect to using AAPA in IPR proceedings.

Following this Court's decision in *Qualcomm I*, the Director issued the Updated AAPA Guidance, which is aligned with this Court's decision and states that if an IPR petition relies on AAPA in combination with a prior art publication, the AAPA does not form the "basis" of the unpatentability ground and thus may properly be considered in an IPR proceeding consistent with § 311.[6] Appx10742. The Director's interpretation of § 311 is the most reasonable reading of § 311 and

[6] The Director disagrees with Shockwave that "[t]his Court does not need to address" the Updated AAPA Guidance. *See* Br. at 25. Deference aside, on the issue of statutory interpretation in this case, the Court should find that the Director's interpretation prevails as the most reasonable application of this Court's decision in *Qualcomm I* regarding the operation of 35 U.S.C. § 311.

maintains fidelity to the language of the statute, this Court's precedent, and Congressional intent.

**1. The Director's reading of § 311 is consistent with the language of the statute.**

Section 311 states that an unpatentability ground in an IPR may only be asserted under §§ 102 or 103 "and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). This language dictates that a prior art patent or printed publication must be relied on in any unpatentability challenge. *See Qualcomm I*, 24 F.4th at 1377. Accordingly, a challenge based solely on AAPA, which is neither a prior art patent or publication, is impermissible. *Id*. The language of § 311 does not, however, go further and foreclose reliance on a prior art patent or printed publication in combination with AAPA.

Section 311 only requires the "basis" of an IPR ground to be a prior art patent or printed publication, but does not require this prior art to be the sole component of a patentability challenge. As Shockwave seems to admit in its brief, the word "basis" therefore presumes, or at least allows, other evidence. *See, e.g.*, Br. at 22 (arguing that AAPA was not properly used by the Board for "some lesser permissible purpose, such as evidence of background knowledge"). Relying on AAPA in combination with a prior art patent or printed publication to form a ground of unpatentability is entirely consistent with the common meaning of

"basis."

Once a ground relies on a prior art patent or printed publication, the threshold requirement of § 311 is met and such prior art may be combined with AAPA based on the statute's citation of 35 U.S.C. § 103 and the function of AAPA in a § 103 inquiry. It is well settled that obviousness under § 103 necessarily depends on the knowledge of the skilled artisan. *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1337 (Fed. Cir. 2020); *Qualcomm I*, 24 F.4th at 1376; *Lone Star*, 809 F. App'x at 777; Appx10741. This dependency stems from § 103's edict to consider whether the differences between the claims and the prior art are obvious "to a person having ordinary skill in the art." 35 U.S.C. § 103(a).[7] *Koninklijke,* 948 F.3d at 1337. The language of § 311 gives no indication that Congress intended to foreclose the longstanding approach to obviousness that requires consideration of "the background knowledge possessed by a person having ordinary skill in the art." *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Evidence of the skilled artisan's knowledge therefore cannot be ignored in an IPR; it must be considered. *Koninklijke,* 948 F.3d at 1337; *see Randall Mfg. v. Rea*, 733 F.3d 1355, 1363-64 (Fed. Cir. 2013). And as this Court

---

[7] Because the '371 patent issued from an application filed before March 16, 2013, the pre-AIA version of § 103 applies. *See* Appx2, n.1. The fundamentals underlying a proper obviousness analysis did not change under the AIA, however, as it relates to the consideration of the knowledge of the skilled artisan.

has already recognized, AAPA is evidence of the skilled artisan's knowledge. *Qualcomm I*, 24 F.4th at 1376 ("a patentee's admissions about the scope and content of the prior art provide a factual foundation as to what a skilled artisan would have known at the time of invention").

Accordingly, because § 311 permits grounds of unpatentability based on § 103, and § 103 in turn requires consideration of the skilled artisan's knowledge, § 311 permits a ground to rely on evidence of this knowledge, such as AAPA, without the evidence impermissibly forming the "basis" of the ground. As discussed in detail in the next section, this Court has already held as much. *See infra* IV.B.2. The Director's Updated AAPA Guidance, stating that AAPA does not form the basis of a ground as long as the ground relies at least one prior art patent or printed publication (Appx10742-10743), is therefore consistent with § 311's requirement for a prior art patent or printed publication as the "basis" of the ground. It is also consistent with § 103's requirement to consider evidence of a skilled artisan's knowledge.

### 2. The Director's reading of § 311 is consistent with this Court's precedent.

The Director's interpretation also aligns with this Court's precedent interpreting § 311 and permitting the use of evidence of the skilled artisan's knowledge in an IPR. First, the Updated AAPA Guidance follows this Court's decision in *Qualcomm I* that AAPA is permitted in IPR proceedings, with the

caveat that it would be impermissible to raise a patentability challenge solely on AAPA without also relying on a prior art patent or printed publication. *See Qualcomm I*, 24 F.4th at 1376-1377; *see also* Appx10742-10743. As this Court recognized, the critical inquiry to establish compliance with § 311 is reliance on a prior art patent or printed publication. *See Qualcomm I*, 24 F.4th at 1376-1377.

Second, the Updated AAPA Guidance follows this Court's holding that AAPA may be used in an IPR proceeding to supply a missing claim limitation. *Qualcomm I*, 24 F.4th at 1376; *see Koninklijke*, 948 F.3d at 1337-38; Appx10743. In *Koninklijke*, for example, this Court permitted the use of evidence of general knowledge to teach the claimed pipelining limitation and the combination of that teaching with the disclosure of a prior art reference to render the claims obvious in an IPR. *Koninklijke*, 948 F.3d at 1337-1338. Thus, this Court has already determined that § 311 permits the use of evidence of the ordinary artisan's knowledge in an IPR in combination with a prior art patent or printed publication. The use of evidence of general knowledge combined with a prior art printed publication permitted in *Koninklijke* mirrors the same use of AAPA combined with a prior art printed publication permitted here.

Finally, the Director treats AAPA in line with this Court's discussion of admissions as a "factual foundation as to what a skilled artisan would have known at the time of [the] invention." *Qualcomm I*, 24 F.4th at 1376. As this Court has

consistently recognized, admissions "are binding on the patentee for purposes of a later inquiry into obviousness." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007); *see Qualcomm I*, 24 F.4th at 1375, n.11 (collecting cases). By permitting reliance on AAPA in an IPR proceeding and not overly restricting its use (*see* Appx10743), the Updated AAPA Guidance properly reflects this precedent and the binding nature of admissions in an obviousness analysis.

#### 3. The Director's reading of § 311 is consistent with the statute's legislative history.

Under the Director's interpretation of § 311, an IPR ground must rely on a prior art patent or printed publication. Appx10742. This requirement is consistent with Congress's aim, reflected in § 311 and its predecessor § 301, of limiting these IPRs and inter partes reexaminations to printed documents. *See* H.R. Rep. No. 112-98, pt. 1, at 45-47 (June 1, 2011) (providing an overview of the basis of a reexamination request and the conversion of inter partes reexamination into IPRs); *see also Qualcomm I*, 24 F.4th at 1376. Such a limit was intended "to provide a cheaper and less time-consuming alternative way to challenge patent validity on certain issues." *Quad Env'l Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 875 n.7 (Fed. Cir. 1991) (citing H.R. Rep. No. 1307, 96th Cong., 2d Sess. 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6463). A ground of unpatentability based on a printed document, for example, was considered easier to examine and avoided

the potentially "expensive" and "cumbersome" evaluation of witness testimony that was involved in, for example, a public use ground. *See Industrial Innovation and Patent and Copyright Law Amendments*: *Hearings on H.R. 6933, et al., Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice, Comm. on the Judiciary*, 96th Congress, 2d Sess. 168-169 (1980) (Responses of Donald R. Dunner). IPRs may not therefore be based on categories of prior art such as "prior public use or prior sales." *See* H.R. Rep. No. 112-98, pt. 1 at 45.

But *Qualcomm I* recognized that AAPA, which is a description of prior art found in the challenged patent, "does not implicate the type of fact-intensive inquiries Congress was seeking to avoid." *Qualcomm I*, 24 F.4th at 1376. Accordingly, requiring reliance on a prior art patent or printed publication but otherwise permitting the combination of AAPA with such prior art is entirely consistent with Congress' goal of IPR proceedings and § 311's language.

Permitting AAPA to be used to satisfy limitations of the claims also furthers Congress's goal of streamlining these proceedings by narrowing the potential issues presented in the trial. *Quad Env'l Techs., supra.* As this case demonstrates, neither party disputes that over-the-wire angioplasty balloon catheters were well known in the art at the time of the purported invention. Appx39; *see also* Appx199, 3:65-4:2. Affirming CSI's use of AAPA in this case will encourage future parties to focus their resources on those limitations that are reasonably in dispute, and

avoid wasting resources.

#### 4. Shockwave's interpretation contradicts the statutory language and the tenets of a proper obviousness analysis.

Shockwave's reading of § 311 to prohibit the use of AAPA in an obviousness ground when asserted in combination with prior art is unsupported by the statute. Shockwave advances an approach that permits AAPA in an IPR to show a "lesser" purpose, such as a skilled artisan's knowledge, but does not permit referencing AAPA in the presentation of an unpatentability ground or using AAPA in combination with prior art patents or printed publications to teach any limitations. *See* Br. at 22, 25 ("[T]o the extent the Guidance is read as permitting ***any*** use of AAPA in an IPR so long as it is used in combination with patents or printed publications, that simply is not consistent with the statute." (emphasis in original)). Shockwave's overly rigid approach is inconsistent with the language of § 311 and with the role of the skilled artisan's knowledge in an obviousness analysis.

##### a. Shockwave's test based on the mere presence of AAPA in the ground of unpatentability lacks support.

Shockwave's formulaic approach improperly relies on how a ground of unpatentability is presented. *See* Br. at 20-22. Shockwave appears to assert that just listing AAPA in the asserted grounds is dispositive that AAPA is being improperly used as a basis, exceeding the limits of § 311. Br. at 21. According to Shockwave,

§ 311's use of the words "only" and "consisting of" excludes listing evidence in an unpatentability ground apart from prior art patents or printed publications. *See* Br. at 20-21. This approach lacks statutory support. As discussed above, the language of § 311 does not foreclose reliance on other evidence in combination with a prior art patent or printed publication—and indeed § 103 compels such reliance. *See supra* IV.B.1. Notably, the words "only" and "consisting of" in § 311 limit the type of prior art that forms the *basis* of a ground, but does not foreclose a ground's citation of other evidence. *See* 35 U.S.C. § 311(b). Section 311 does not say, for example, that the ground must "only cite" or "only rely" on prior art patents or printed publications. The statute is worded differently and more broadly. Thus, Shockwave lacks support for any implication that the phrasing or presentation of an IPR ground must be silent as to evidence other than prior art patents or printed publications.

**b. Shockwave's restrictions on the use of AAPA are inconsistent with § 103.**

While Shockwave agrees that AAPA may be used in an IPR to establish the knowledge of the skilled artisan (*see* Br. at 22), Shockwave nevertheless asserts that § 311 excludes use of that knowledge in combination with prior art patents or printed publications. *See* Br. at 20, 21, 25. This proposed extra-statutory restriction is without merit because it is inconsistent with the permissible uses of AAPA in an obviousness analysis.

First, Shockwave's assertion that § 311 prohibits combining AAPA with a prior art patent or printed publication contradicts this Court's precedent on the permissible uses of evidence like AAPA. As discussed above, this Court held in *Qualcomm I* and *Koninklijke* that AAPA and evidence like it (for example, evidence of general knowledge) may be used to supply missing claim limitations. *Qualcomm I*, 24 F.4th at 1376; *Koninklijke*, 948 F.3d at 1337; *see* Section IV.B.3, *supra*. And obviousness mandates establishing more than just that each claim limitation was known—it requires establishing that such limitations would be combined by a person of ordinary skill. *KSR*, 550 U.S. at 418. It does not stand to reason, therefore, that this Court would permit AAPA to supply a missing claim limitation but not permit establishing that those claim limitations would be combined with those taught by a prior art reference as part of a proper obviousness analysis. Indeed, *Koninklijke* demonstrates that combining evidence of general knowledge with a prior art reference is permissible under § 311. *Koninklijke*, 948 F.3d at 1337 (noting that the skilled artisan would have been motivated to combine the pipelining known in the art with the teachings of SMIL). Shockwave's proposed restriction against combining the teachings of AAPA with the prior art therefore conflicts with this Court's precedent.

Contrary to Shockwave's assertions, *Yeda Research v. Mylan Pharms. Inc.*, 906 F.3d 1031 (Fed. Cir. 2018) does not prohibit combining evidence like AAPA

with a prior art patent or printed publication. Br. at 21-22. *Yeda* concerned the use of a post-priority reference, which is distinct from AAPA. *See Yeda,* 906 F.3d at 1037. AAPA has been long understood to be "valid prior art" regarding what was known in the art and is binding on the patentee. *In re Fout*, 675 F.2d 297, 300 (C.C.P.A. 1982); *In re Nomiya*, 509 F.2d 566, 571 (C.C.P.A. 1975); *Constant v. Advanced Micro-Devices, Inc*., 848 F.2d 1560, 1570 (Fed. Cir. 1988); *In re Rishoi*, 197 F.2d 342, 343–44 (C.C.P.A. 1952). Further, *Yeda* did not address the indispensable role of the background knowledge of the person of ordinary skill and did not limit the use of evidence of a skilled artisan's knowledge at the time of the invention. *Yeda,* 906 F.3d at 1041. *Yeda*'s quotation of a Board panel's statement about the limited use of non-prior art evidence therefore does not supplant the clear directive in *Koninklijke* and *Qualcomm I* that evidence of a skilled artisan's knowledge may provide a missing claim limitation.

Second, nothing in the obviousness case law supports Shockwave's suggestion that AAPA must play a "lesser" role of reduced significance in an IPR. *See* Br. at 22. Any insinuation by Shockwave that AAPA has a lower value in the obviousness analysis is incorrect. This Court has made clear that evidence of a skilled artisan's knowledge plays a fundamental role in such an analysis, including to show that claim limitations were within the skilled artisan's grasp at the time of the invention. *See e.g.*, *Randall Mfg.*, 733 F.3d at 1363-64; *see also Koninklijke*,

948 F.3d at 1337.

In conclusion, Shockwave's attempts to restrict the use of AAPA in an IPR proceeding go well beyond the limit placed by § 311 and run counter to the tenets of AAPA and obviousness analyses. The Director's interpretation, as set forth in the Updated AAPA Guidance, requiring reliance on a prior art patent or printed publication, but not otherwise restricting the use of AAPA, is the better reading of § 311.

### C. The Board correctly applied the Director's interpretation of § 311 and found CSI's use of AAPA proper.

On remand, the Board properly applied the Updated AAPA Guidance and correctly found that CSI's use of AAPA was not improper. Appx31-32. Shockwave conceded that Figure 1's angioplasty balloon was AAPA by labeling Figure 1 as "PRIOR ART" and stating that the system was "a typical prior art over-the-wire angioplasty balloon catheter." Appx39; *see In re Nomiya*, 509 F.2d at 571; *see also Qualcomm I*, 24 F.4th at 1375, n.11. Shockwave has never disputed that these statements relied on by CSI were admissions. Instead, Shockwave asserts that CSI's reliance on AAPA was improper based on Shockwave's interpretation of the role of AAPA in an IPR. *See* Br. at 19-25. As addressed above, however, Shockwave's interpretation of § 311 is incorrect, and as a result, so is its application to the facts of this case.

Consistent with the Updated AAPA Guidance, because CSI's petition relied

on the prior-art Levy reference in addition to its reliance on the AAPA, the AAPA did not form the basis of the unpatentability ground in the petition. *See Qualcomm I*, 24 F.4th at 1376; Appx31. The petition relied on Levy as teaching most of the elements of the catheter of claim 1. Appx27-31; Appx123-126; Appx354-362. The reliance on Levy satisfied § 311(b)'s requirement that a ground of unpatentability be based on a prior art printed publication. Appx31-32. The AAPA was used to supply some of the differences between claim 1 and Levy—those claim elements regarding the guidewire lumen in conventional angioplasty catheters and the angioplasty balloon—elements that were admittedly known in the art at the time of the invention. Appx31-32.

The fact that the petition combined the AAPA with the teachings of Levy, or that it did not state that the "AAPA was merely evidence of the general knowledge of a POSA" (Br. at 22-23) does not render that use improper. *See supra* IV.B.4.a. Because the petition did not use AAPA to form the basis of the obviousness ground, there was no need for the Board to "cure" the petition. The Board initiated rehearing for the purpose of reconsidering "the issue of how AAPA should be considered in view of the AAPA Guidance." Appx5. The Board's analysis on rehearing finding that the reliance on AAPA was as "background knowledge possessed by a person of ordinary skill in the art" is not evidence that the Board "cured" the petition or "shifted gears," as Shockwave asserts. Br. at 22-23. Rather,

the Board merely restated what an admission is—"a factual foundation as to what a skilled artisan would have known at the time of the invention." *See Qualcomm I*, 24 F.4th at 1376. Section 311 does not require a petition to use any magic words or phrasing to establish an admission as background knowledge. Admissions are, by their very nature, evidence "establishing the background knowledge possessed by a person of ordinary skill in the art." *Id*. Because the Board's final decision relied on the same AAPA for the same purpose as the petition, the Board did not improperly expand the scope of the petition. Shockwave's attempt to diminish the role of admissions as evidence of the knowledge of a skilled artisan should therefore be rejected. *See Randall Mfg.*, 733 F.3d at 1363-64.

Shockwave's further argument that the Board improperly relied on Healy and Hayes to teach the claimed "guide wire lumen" also falls flat. Br. at 25-28. Although the Board discussed that Healy and Hayes teach "the well-known configuration of an angioplasty catheter," the Board plainly stated that it did not need to rely on Healy and Hayes to support that knowledge. Appx32 ("we find Petitioner's citation to the AAPA as evidence of the knowledge of an ordinarily skilled artisan is sufficient even without the additional support provided by Healy and Hayes."). The Board simply found that Healy and Hayes were consistent with Shockwave's admission that a person of skill in the art would have known that over-the-wire angioplasty balloon catheters were "PRIOR ART." *Id.*

## V. CONCLUSION

Because the Board correctly interpreted and applied § 311(b) and found that AAPA was not used improperly as the basis of a ground of unpatentability, this Court should affirm the Board's final written decision finding the challenged claims of the '371 patent unpatentable as obvious.

Respectfully submitted,

January 23, 2024

/s/ Mai-Trang D. Dang

FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

PETER J. AYERS
Senior Counsel for Patent Law and Litigation

MAI-TRANG D. DANG
MAUREEN D. QUELER
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

*Attorneys for the Director of the United States Patent and Trademark Office*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Fed. R. App. P. 32(a)(7) and Fed. Cir. R. 32(b) that the foregoing **Brief For Intervenor** complies with the type-volume limitation. The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 6,847 as measured by the word-processing software used to prepare this brief.

January 23, 2024

/s/ Mai-Trang D. Dang
Mai-Trang D. Dang
Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035